OPINION
{¶ 1} Defendant-appellant Ray E. Dunham appeals the sentences imposed upon him by the Jefferson County Common Pleas Court after he pled guilty to three offenses. This court must determine whether the trial court properly imposed non-minimum and consecutive sentences. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF THE CASE {¶ 2} On July 8, 2001, appellant was driving a pick-up truck and pulling a trailer with a bass boat. A witness followed him for some distance and watched him drive erratically and aggressively. Appellant then approached three motorcycles, each of which had a driver and a passenger. He pulled up next to them and then swerved into their lane, hitting one motorcycle and causing another to crash. Appellant was indicted on four counts of aggravated vehicular assault while driving under the influence in violation of R.C. 2903.08(A)(1); these counts were raised to second degree felonies under R.C. 2903.08(B)(1)(a) due to a driving under suspension specification. He was also indicted on four counts of aggravated vehicular assault for reckless driving in violation of R.C. 2903.08(A)(2); these counts were raised to third degree felonies under R.C. 2908.02(C) due to a driving under suspension specification. He was also indicted for failure to stop after an accident, driving under the influence, and driving under suspension.
 {¶ 3} On September 25, 2001, appellant pled guilty to one count of aggravated vehicular assault while driving under the influence and under suspension, one count of aggravated vehicular assault while driving reckless and under suspension, and one count of driving under the influence. In exchange, the state dismissed the remaining charges.
 {¶ 4} A sentencing hearing was conducted on September 28, 2001. Three of the four injured victims testified. The first victim testified that she was transported by helicopter due to a concussion. She also suffered a broken shoulder, a broken bone in her face, and multiple scrapes and bruises. (Tr. 3).
 {¶ 5} Her husband, the second victim, testified to the experience of seeing his wife lying in a pool of blood. (Tr. 5). He explained that he suffered a broken rib, a broken foot bone, and road rash. (Tr. 5-6). He noted that appellant had a suspended driver's license, no insurance, and no license plate on the trailer he was pulling. He railed against appellant's act of fleeing the scene and leaving injured people lying in the middle of the road. He opined that appellant showed no remorse. He concluded that appellant wounded him and his wife physically, financially, and mentally. (Tr. 5). He stated that his wife's medical bills were $21,000 and his were $1,100; he also had to pay a deductible before his insurance company paid for the $6,600 worth of damages to his motorcycle. (Tr. 6). He disclosed that his son, who was on the third motorcycle with his wife, was traumatized by the accident and will never ride a motorcycle again. (Tr. 6).
 {¶ 6} The third victim testified that he suffered road rash and exposed tendons. He explained that his wife could not attend the sentencing hearing due to her emotional state and the fact that she was only recently released from the hospital, more than two months after the accident. He testified that his wife suffered a broken arm, three blood clots in her head, and an open fracture to the back of her skull. She had surgery to remove two of the clots and endured exploratory surgery for internal bleeding. She was unconscious for sixteen days and could not talk until recently. (Tr. 7-8). This victim complained that appellant had been without a license for twelve years and that he had no remorse. He opined that appellant knew he hit them. (Tr. 10). He estimated his wife's medical bills as totaling more than one million dollars. (Tr. 9). He and the second victim both related that at the preliminary hearing, they watched appellant repeatedly shake his head in denial of the charges and then sit down and laugh about something with the other prisoners. (Tr. 5, 8).
 {¶ 7} The prosecutor noted how the eyewitness's statement established that appellant had been driving aggressively for some miles before he encountered the motorcycles. (Tr. 10). The prosecutor also noted that appellant's friends gave statements that he came to their house after the accident and stated, "I fucked up. I think I hit a couple bikes." (Tr. 13). The friends' neighbor, who later called the police after hearing the vehicle description on his radio, reported that appellant reeked of alcohol when he asked for directions to his friends' house. (Tr. 12). The prosecutor confirmed that appellant had no liability insurance. (Tr. 14).
 {¶ 8} The trial court sentenced appellant to seven years for aggravated vehicular assault while driving under the influence and under suspension, a second degree felony carrying a minimum of two years and a maximum of eight years in prison. The court sentenced appellant to four years in prison for aggravated vehicular assault while driving under suspension, a third degree felony carrying a minimum of one year and a maximum of five years in prison. The court ordered these sentences to run consecutively. Finally, the court sentenced appellant to six months for driving under the influence, a first degree misdemeanor, to run concurrently with the four-year sentence.
 {¶ 9} In November 2002, more than one year after imposition of his sentence, appellant requested leave to file a delayed notice of appeal. In February 2003, we sustained his request. In July 2003, appellant's brief was filed contesting the order to pay restitution and the costs of prosecution. On September 9, 2003, the trial court dismissed the order to pay restitution and the costs of prosecution in an agreed judgment entry. Thus, appellant's counsel filed a voluntary dismissal of the appeal on October 6, 2003. However, a week later, appellant filed a motion to disregard the voluntary dismissal as being against his wishes. He alleged that issues remained relative to his consecutive sentences. We granted leave to file a new brief and appointed new counsel. In March 2004, appellant filed his new brief.
 ASSIGNMENT OF ERROR {¶ 10} Appellant's sole assignment of error provides:
 {¶ 11} "The trial court committed reversible error in sentencing the defendant to consecutive sentences without making the appropriate findings as required by ohio revised code section2929.14(E)(4)."
 {¶ 12} Although the text of this assignment only mentions an issue surrounding the imposition of consecutives sentences, appellant also argues that the trial court failed to set forth the required findings and reasons for deviating from the minimum sentences for the two felonies. First, we note that complaints about a non-minimum sentence and accompanying allegations that R.C. 2929.14(B) was violated should have been presented in a separate assignment of error; alternatively, this assignment of error should have included this complaint in its text. App.R. 12(A)(2) and 16(A)(7).
 {¶ 13} Next, it is well-established that the trial court isnot required to set forth its reasons for deviating from the minimum sentence. State v. Edmonson (1999), 86 Ohio St.3d 324,326. See, also, R.C. 2929.19(B)(2). Rather, the sentencing court need only make a finding that a minimum sentence would either demean the seriousness of the offender's conduct or not adequately protect the public. R.C. 2929.14(B) (findings need not be made if the offender served prior prison time). One of these requisite findings must be made on the record at the sentencing hearing. See State v. Comer, 99 Ohio St.3d 463, 2003-Ohio-4165, at ¶ 26.
 {¶ 14} Here, the court specifically found both options at the sentencing hearing. The court found that minimum terms would not constitute adequate punishment as such sentences would be demeaning to the seriousness of the offenses and would not adequately protect the public. (Tr. 24). Both findings are reasonably supported by the record.
 {¶ 15} While appellant attempts to minimize the harm associated with his offenses, the statements of the victims at the sentencing hearing greatly diminish the validity of his argument. We also note that the court discussed the seriousness and recidivism factors in great detail as will be reviewed infra. Moreover, although the court was not imposing a maximum sentence, the court found that appellant posed the greatest likelihood of committing future crimes. (Tr. 24).
 {¶ 16} By making at least one of the findings contained in R.C. 2929.14(B), the court was permitted to deviate from the minimum sentence. Hence, this argument is overruled.
 {¶ 17} We also note that it appears appellant served prior prison time. As the court noted and as the FBI record shows, appellant was discharged from parole in 1979. The status of being on parole typically requires the offender to have been in prison. In fact, just prior to this entry, the criminal record shows a sentence of one to ten years for his 1976 uttering and forgery conviction in West Virginia. Because it seems clear that appellant served prior prison time, the court was not even required to make the findings in R.C. 2929.14(B) for deviating from the minimum sentence.
 {¶ 18} We now turn to appellant's argument that the trial court erred in imposing consecutive sentences. Pursuant to R.C.2929.14(E)(4), the trial court can order the sentences to run consecutively if the court finds that: (1) the consecutive sentence is necessary to protect the public from future crime or to punish the offender, (2) the sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) at least one of the following apply:
 {¶ 19} "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 {¶ 20} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 21} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 22} The court must state its findings and reasons for imposing consecutive sentences on the record. R.C.2929.14(B)(2)(c). This must occur at the sentencing hearing.Comer, 2003-Ohio-4165, at ¶ 20. Although Comer advised that consecutive sentences are reserved for the worst offenses and offenders, we can no longer review sentences for abuse of discretion to determine if they are reasonable. R.C.2953.09(G)(2). Rather, if the findings and reasons were presented at the sentencing hearing, the record supports the findings, and the sentence is not otherwise contrary to law, we are constrained to affirm the trial court's sentence. R.C. 2953.08(G)(2)(a), (b).
 {¶ 23} The trial court found the existence of both options within the first consecutive sentence factor: that consecutive sentences were necessary to protect the public or to punish appellant. The court then found the existence of the second consecutive sentence factor: that consecutive service would not be disproportionate to appellant's conduct and to the danger that he poses to the public. Finally, the court found the existence of the second option within the third consecutive sentence factor: that the harm was so exceptionally great that a single term of imprisonment would not adequately reflect the seriousness of his course of conduct. In the alternative, the court found the existence of the third option within the third consecutive sentence factor: that consecutive service is necessary to protect the public. (Tr. 24).
 {¶ 24} As for reasons surrounding seriousness, the court had explained that the victims suffered serious physical, psychological, and economic harm. The court pointed out that appellant's blood alcohol level was extremely high (.209), although it was not tested until six hours after the accident. (Tr. 22, 23). The court noted that appellant was driving under suspension. The court stated that appellant left the scene in order to "get away" and that he did not show remorse. (Tr. 22, 23). The court also disputed defense counsel's statement that the act was not intentional. (Tr. 23).
 {¶ 25} As for reasons surrounding recidivism, the court noted that appellant's record evidenced at least one prior driving under the influence conviction. (Tr. 24). In fact, appellant admitted on the record that he had at least two prior convictions for driving under the influence, one in 1991 in Oklahoma and one in 1989. (Tr. 21). The court opined that appellant shows a pattern of alcohol abuse and a failure to acknowledge his problem. As aforementioned, the court also found that appellant posed the greatest likelihood of recidivism for committing future crimes. (Tr. 24).
 {¶ 26} The court went through appellant's criminal record, which disclosed 1974 convictions for passing bad checks and forgery and uttering. He was also arrested for grand theft that year, but according to his statement at sentencing, this was lowered to misuse of an automobile. The court outlined how appellant violated his probation in 1976. His record shows another forgery and uttering conviction in 1976. As aforementioned, it appears he spent some time in prison and then on parole. The court explained that appellant was arrested for burglary in 1989, concealing stolen property in 1995, and possession of a controlled substance and possession of drug paraphernalia in 1999. (Tr. 21).
 {¶ 27} The court's decision to impose consecutive sentences was sufficiently explained and supported by the record. We do not find by clear and convincing evidence that the sentences were unsupported by the record or contrary to law. See R.C. 2953.08
(G)(2)(a), (b) (setting forth this as our standard of review in this case rather than abuse of discretion).
 {¶ 28} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Donofrio, J., DeGenaro, J., concurs.